1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10 GREGORY L. BROWN,

11          Plaintiff,            No. CIV S-03-1224 GEB KJM P

12     vs.

13 D.L. RUNNELS, et al.,          <u>ORDER AND</u>

14        Defendants.        <u>FINDINGS & RECOMMENDATIONS</u>

15 _____/

16         Plaintiff is a state prison inmate proceeding pro se with a civil rights action under

17 42 U.S.C. § 1983.  Defendants have filed a motion to dismiss the second amended complaint for

18 failure to exhaust administrative remedies and for failure to state a claim; plaintiff has filed a

19 motion for a temporary restraining order and for preliminary injunctive relief.

20 I. <u>The Allegations Of The Amended Complaint</u>

21         Plaintiff alleges that defendant Stone denied plaintiff the right to receive the

22 magazines Black Beauties and Black Tails.  Defendants Kosub, Hubbard, Colon, Runnels, Bard,

23 Rianda and Alameida learned of Stone's actions through the grievance process, but failed to

24 intervene to cure the constitutional violation.  12/01/03 Amended Complaint (Am. Compl.) ¶ 15.

25         Defendant Thompson delayed giving plaintiff the book <u>Philosophy and</u>

26 <u>Revolution</u> and failed to give him the book <u>Wretched Of The Earth</u>; he also failed to notify him

that the books had been delayed and refused.  Defendants Jackson and Wagner denied plaintiff's appeals about these subjects and defendants Runnels and Alameida did not respond to his letters outlining his claims of First Amendment violations.  Am. Compl. ¶¶ 16-19.

The defendants have conspired to deprive plaintiff of his right to receive published material and, by mishandling the grievance procedure, to deprive him of his right of access to the courts.  Am. Compl. ¶ 18.

II.  Motion To Dismiss For Failure To Exhaust Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Conditions of confinement" subject to exhaustion have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prisons."  18 U.S.C. § 3626(g)(2); Smith v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001); see also Lawrence v. Goord, 304 F.3d 198, 200 (2d Cir. 2002).  Proper exhaustion of available remedies is mandatory.  Booth v. Churner, 532 U.S. 731, 741 (2001); Woodford v. Ngo, ___ U.S. ___, 126 S. Ct. 2378 (2006) (addressing timeliness aspect of proper exhaustion).

California prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims.  See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7.  Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims.  Cal. Code Regs. tit. 15, § 3084.5.

To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint.  Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case"); Brown v. Sikes, 212 F.3d 1205, 1209 (11th Cir. 2000) ("1997e(a) requires that a prisoner provide as much relevant

1  information as he reasonably can in the administrative grievance process," but does not require

2  that he do more than that).

3       A motion to dismiss for failure to exhaust administrative remedies prior to filing

4  suit arises under Rule 12(b) of the Federal Rules of Civil Procedure.  Wyatt v. Terhune, 315 F.3d

5  1108, 1119 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003).  In

6  deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look

7  beyond the pleadings and decide disputed issues of fact.  Id. at 1119-20.  Defendants bear the

8  burden of proving plaintiff's failure to exhaust.  Id. at 1119.

9       Defendants concede that plaintiff has exhausted his administrative remedies as to

10  defendant Stone's alleged withholding of Black Beauties and Black Tails, but argues that he has

11  failed properly or completely to exhaust administrative remedies as to the remaining defendants.

12       A.  Runnels, Alameida, Hubbard, Kosub, Rianda And Corrective Measures

13       Defendants have submitted the declaration of J. Pearson, Acting Chief Of Inmate

14  Appeals.  Pearson avers that a review of the records of the Inmate Appeals Branch showed that

15  plaintiff secured a Director's Level Decision on his grievance concerning defendant Stone's

16  refusal to release his publications, but that he has not received such a decision concerning his

17  claim that defendants Alameida, Hubbard, Kosub, Bard, Rianda and Hubbard failed to correct the

18  violation after learning of the improper denial of the magazines.  Declaration of J. Pearson

19  (Pearson Decl.) ¶¶ 5, 7-8.  The grievance about the magazines, Log No. 02-00389, is attached as

20  Exhibit A to the Declaration.

21       The grievance form, a CDC 602, informs the inmate that he "may appeal any

22  policy, action or decision which has a significant adverse affect upon you," and instructs him to

23  /////

24  /////

25  /////

26  /////

1   "describe the problem."  Pearson Decl., Ex. A.  Plaintiff "describe[s] the problem" in part as

2   follows:

3           The publication section of the CDC 1819[1] form specifically states
            that CCR, Title 15 section shall be cited when material
4           (publications) meet its disapproval criteria.  No such section was
            cited, therefore the publication meets the approval of the Director's
5           rules, and, the withholding of the publication violates the 1st
            Amend. of the U.S. Const."

6

7   Id.

8           In Brown, cited above, plaintiff filed prison grievances over the alleged denial of

9   medical care that became the basis of his civil rights suit.  The district court dismissed the action,

10  because plaintiff had not named the warden and the commissioner of corrections, both

11  defendants, in the grievances.  The Eleventh Circuit reversed, finding that exhaustion does not

12  always bar suit against a person not named in the grievance.  It noted:

13          [W]e conclude that while § 1997e(a) requires that a prisoner
            provide as much relevant information as he reasonably can in the
14          administrative grievance process, it does not require that he do
            more than that.

15

16  Id. at 1207.  It continued:

17          But naming the warden and commissioner in a grievance simply
            because they are the top officials in charge of the prison would not
18          have advanced any of the policies underlying the exhaustion
            requirement.

19

20  Id. at 1209.

21          In Strong v. David, 297 F.3d 646 (7th Cir. 2002), the defendants contended

22  dismissal of the plaintiff's civil rights action was proper because his grievances had not been

23  detailed enough.  The Seventh Circuit disagreed, holding that the specificity required to exhaust

24

25          [1] The filed photocopy of the grievance has cut some letters and numerals off the right
        side of the form, so that the reference appears to be to form 18.  It appears that the form for
        disallowed publication is actually a CDC 1819.  See Am. Compl., Ex. A (Notification Of
26      Disapproval – Mail/Packages/Publications CDC 1819).

1    depends on the administrative system: "the grievances must contain the sort of information that

2    the administrative system requires." Id. at 649.  It cautioned:

3           The only constraint is that no prison system may establish a
            requirement inconsistent with the federal policy underlying § 1983
4           and § 1997e(a).  Thus, for example, no administrative system may
            demand that the prisoner specify each remedy later sought in
5           litigation – for Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819,
            149 L.Ed.2d 958 (2001) holds that § 1997e(a) requires each
6           prisoner to exhaust a *process* not a *remedy*.

7    Id. at 649-50 (citations omitted; emphasis in original).

8           In Irvin v. Zamora, 161 F. Supp. 2d 1125 (S.D. Cal. 2001), the District Court

9    followed the lead of the Eleventh Circuit.  The court observed:

10          [p]laintiff's grievances did present the relevant factual
            circumstances giving rise to a potential claim and did request the
11          identities of the individuals directly responsible for spraying the
            pesticide.  This was sufficient to put prison officials on notice of
12          possible problems with these individuals.  Plaintiff also requested
            that the prison conduct an investigation of the facts.  As a result,
13          the facts were investigated and developed, and the prison had an
            opportunity to exercise its discretion or correct any errors as
14          appropriate under the circumstances. . . .In other words, plaintiff's
            grievances were sufficient under the circumstances to put the
15          prison on notice of the potential claims and to fulfill the basic
            purposes of the exhaustion requirement.
16

17   Id. at 1134-35.  And as the Ninth Circuit has observed, when an inmate has followed the

18   instruction on the grievance form to "describe the problem," he has "availed himself of the

19   administrative process the state gave him." Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir.

20   2005).

21          In this case, plaintiff put the institution and ultimately the department on notice of

22   his claim that his publications were withheld in violation of the department's own rules and the

23   constitution.  Requiring him to exhaust a separate claim based on the authorities' alleged failure

24   to take corrective action after learning of the problem would "not . . . advance[] any of the

25   policies underlying the exhaustion requirement." Brown, 212 F.3d at 1209.  Plaintiff "described

26   /////

1  the problem" as directed by the grievance form, thus putting those with the power to correct it on

2  notice.

3      B.  Defendants Thompson, Jackson, Wagner, Runnels And Alameida And
           Philosophy & Revolution And Wretched Of The Earth

4

5          Defendants argue that plaintiff did not receive a Director's Level Decision on a

6  grievance about his delay in receiving <u>Philosophy & Revolution</u> or about the denial of his right to

7  receive <u>Wretched Of The Earth</u>.  Pearson Decl. ¶¶ 10-12.  Plaintiff argues that he was prevented

8  from grieving these violations, because he was never issued a CDC 1819, which must be attached

9  to the grievance form.  Opposition (Opp'n) at 6.

10         As part of Exhibit C to the Amended Complaint, plaintiff has provided a

11 grievance without a log number, but stamped received by HDSP Appeals on August 28, 2003.

12 In this grievance, plaintiff complains about his delayed receipt, without notification, of

13 <u>Philosophy and Revolution</u>, and the deprivation, again without notification, of <u>Wretched Of The</u>

14 <u>Earth</u>.  On the lower right corner is a handwritten notation, "8/28/03 s/o #5 Attach 1819."  An

15 appeal screening form dated August 28, 2003 is attached, with several reasons checked.  The first

16 is that the appeal is a duplicate; the second is that "the appeal is incomplete or necessary

17 supporting documents are not attached."  Under this printed explanation, a box is checked,

18 advising plaintiff to "attach copy of CDC-1819 (Notice of Disallowed Mail Form)" and to

19 "provide proof of claim."  This form is followed by plaintiff's letter, dated September 2, 2003,

20 referring to the screening form of August 28, in which he notes that the grievance plainly stated

21 he had not received notice through a CDC 1819 that his publication had been withheld.

22         Plaintiff has included a similar set of documents dealing specifically with the

23 denial of <u>Wretched of the Earth</u>.  This grievance, dated August 21, 2003, received a response at

24 the informal level, but was rejected at the next level because of the failure to attach a CDC 1819.

25 Plaintiff again complained, in a letter dated September 10, 2003, that he could not comply

26 because he had not received the form.  Am. Compl., Ex. C.

1           In <u>Miller v. Tanner</u>, 196 F.3d 1190, 1194 (11th Cir. 1999), the Court of Appeals

2    found that the inmate had exhausted all available remedies even though he had not pursued his

3    grievance to the highest level of review when the denial of his intermediate grievance stated

4    "[w]hen any grievance is terminated at the institutional level you do not have the right to appeal.

5    The above listed grievance(s) is closed."  As the court noted, this statement told the inmate that

6    further pursuit of his administrative remedies was not required and was "even prohibited."  <u>Id</u>.

7            In <u>Miller v. Norris</u>, 247 F.3d 736 (8th Cir. 2001), plaintiff alleged he had not

8    pursued administrative remedies because the prison refused to provide him with grievance forms.

9    The court noted that "a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an

10    'available' remedy under § 1997e."

11            In <u>Brown v. Croak</u>, 312 F.3d 109, 111-12 (3d Cir. 2002), the inmate alleged he

12    was told by prison officials he should wait to file his grievance until an investigation into his

13    claims of assault had been completed and only then could he pursue the administrative process if

14    he was not satisfied with the result of the investigation.  The Court of Appeals observed:

15                Assuming security officials told Brown to wait for the termination
                 of the investigation before commencing a formal claim, and

16                 assuming the defendants never informed Brown that the
                 investigation was completed, the formal grievance proceeding

17                 required by DC-ADM 804 was never "available" to Brown within
                 the meaning of 42 U.S.C. § 1997e.

18

19    <u>Id</u>. at 113.

20            Plaintiff has presented evidence suggesting that administrative remedies were not

21    available to him because he had not received the CDC 1819, which caused his grievances about

22    the <u>Philosophy and Revolution</u> and <u>Wretched Of The Earth</u> publications to be screened out.  As

23    in the two <u>Miller</u> cases and <u>Brown</u>, prison officials told plaintiff that he could not pursue his

24    administrative remedies without a form that other officials had not provided to him and

25    continued not to provide after plaintiff's followup letters.

26    /////

1  Defendants have filed no reply to plaintiff's opposition, and thus have not

2  explained what steps plaintiff could or should have taken that would have enabled him to follow

3  the grievance process  through to the Director's Level.  Accordingly, defendants have not borne

4  their burden of showing plaintiff failed to pursue available administrative remedies.  This portion

5  of the amended complaint has been exhausted.

6      C.  <u>Conspiracy To Deny Plaintiff Access To The Courts And Deprive Him Of
   Publications</u>

7

8  Defendants argue that plaintiff did not receive a Director's Level determination of

9  any grievance concerning a conspiracy among defendants to deny him access to the courts and to

10  deprive him of his right to receive published material.  Pearson Decl. ¶¶ 13-14.

11  Plaintiff argues that he filed a grievance about the conspiracy, but that it, like

12  those about the publications, was "rejected, ignored or interfered with by the defendants/prison

13  officials . . . ," and refers the court to Exhibit D of the Amended Complaint.  Opp'n at 7.  That

14  exhibit is a grievance form, dated September 18, 2003, in which plaintiff mentions the conspiracy

15  to deprive him of his rights.  This grievance form has no attachments providing any reason for its

16  rejection and no indication, by stamp or handwritten notation, that it was submitted to or received

17  by the appeals office at High Desert State Prison.  Moreover, plaintiff does not explain how or

18  why the form was returned to him or even how he attempted to have it delivered to the

19  appropriate parties.  Accordingly, defendants have borne their burden by pointing to plaintiff's

20  failure to exhaust administrative remedies as to his claim of conspiracy.

21      D.  <u>Total Exhaustion</u>

22  Defendants argue that the entire action should be dismissed if any of the claims

23  have not been exhausted.  The Ninth Circuit has rejected this "total exhaustion" approach to civil

24  rights claims, holding that "Congress intended no special dismissal rules for § 1983 prisoner suits

25  in addition to those spelled out in § 1997e(c)."  <u>Lira v. Herrera</u>, 427 F.3d 1164, 1175 (9th Cir.

26  2005), <u>petition</u> <u>for</u> <u>cert.</u> <u>filed</u>, 74 U.S.L.W. 3425 (Jan. 6, 2006) (No. 05-878).  Accordingly, when

1   a civil rights action contains exhausted and unexhausted claims, "a district court should simply

2   dismiss the unexhausted claims when the unexhausted claims are not intertwined with the

3   properly exhausted claims." <u>Id</u>.  However,

4          when a plaintiff's "mixed" complaint includes exhausted and
           unexhausted claims that *are* closely related and difficult to
5          untangle, dismissal of the defective complaint with leave to amend
           to allege only fully exhausted claims, is the proper approach.

6

7   <u>Id</u>. at 1176 (emphasis in original).

8          Here, while the unexhausted claim is related to the others in the complaint, it is

9   easy to untangle.  The alleged conspiracy to deny plaintiff access to publications and to the court

10  would require plaintiff to show a mutual understanding among conspirators to deprive plaintiff of

11  constitutional rights, <u>see</u> <u>Duvall v. Sharp</u>, 905 F.2d 1188, 1189 (8th Cir. 1990), while the claims

12  based on specific deprivations must be based on a showing that they are not "reasonably related

13  to a legitimate penological objective." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  Because each

14  claim has different elements, the exhausted claims can proceed separately from the one that is

15  unexhausted, without prejudice to any party.  Accordingly, the court will recommend that only

16  the portion of the complaint alleging conspiracy be dismissed.

17  III.  <u>Motion To Dismiss For Failure To State A Claim</u>

18         In considering a motion to dismiss, the court must accept as true the allegations of

19  the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S. 738, 740

20  (1976), construe the pleading in the light most favorable to the party opposing the motion and

21  resolve all doubts in the pleader's favor.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, <u>reh'g</u> <u>denied</u>,

22  396 U.S. 869 (1969).  Moreover, pro se pleadings are held to a less stringent standard than those

23  drafted by lawyers.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A motion to dismiss for failure

24  to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no

25  set of facts in support of the claim that would entitle him to relief.  <u>See</u> <u>Hishon v. King &</u>

26  <u>Spalding</u>, 467 U.S. 69, 73 (1984) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>see</u> <u>also</u>

9

1  Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

2      A.  Wretched Of The Earth

3          Defendants argue that the informal response to plaintiff's grievance about this

4  book shows that the book violated the CDC's policy against publications containing pictures of

5  frontal nudity.  Such a policy, they argue, has been upheld as constitutional in Frost v.

6  Symington, 197 F.3d 348 (9th Cir. 1999) and Mauro v. Arpaio, 188 F.3d 1054 (9th Cir. 1999),

7  and plaintiff has failed to refute the claimed reason for the rejection or otherwise challenge the

8  policy.  Motion to Dismiss (MTD) at 8.

9          Defendants have read the complaint and their own regulations too narrowly.

10  Plaintiff alleges that the denial was without penological justification; construed liberally, this is

11  indeed an attack on the claimed reason for the rejection and the policy underlying the action.  See

12  Turner v. Safley, 482 U.S. 78, 89 (1987) (practice that impinges on constitutional rights is valid

13  if it is reasonably related to a legitimate penological objective).  In addition, the regulation used

14  to justify the rejection allows sexually explicit materials that meet the following criteria:

15                 Educational, medical/scientific, or artistic materials, including, but
               not limited to, anatomy medical reference books, general
16                 practitioner reference books and/or guides, National Geographic, or
               artistic reference material depicting historical, modern, and/or post
17                 modern era art, purchased or possessed by inmates and approved
               by the institution head or their designee on a case-by-case basis.

18

19  15 Cal.Code Regs. § 3006(17)(B)(2).  This court cannot find, at this stage, that plaintiff will be

20  unable to show that Wretched Of The Earth, a book about political movements in colonial and

21  post-colonial Africa, qualifies as an educational book.[2]

22  _____

23     [2]  The book is described as follows on the Amazon.com website:

24  A distinguished psychiatrist from Martinique who took part in the Algerian Nationalist
Movement, Frantz Fanon was one of the most important theorists of revolutionary
struggle, colonialism, and racial difference in history. Fanon's masterwork is a classic
25  alongside Edward Said's Orientalism or The Autobiography of Malcolm X, and it is now
available in a new translation that updates its language for a new generation of readers.
26  The Wretched of the Earth is a brilliant analysis of the psychology of the colonized and

1    Moreover, plaintiff has alleged that the book was withheld without notification.

2    An inmate "has a Fourteenth Amendment due process liberty interest in receiving notice that his

3    incoming mail is being withheld by prison authorities." Frost, 197 F.3d at 353.  This portion of

4    the complaint states a claim.

5        B.  Philosophy And Revolution

6        Defendants argue that the complaint does not state a claim of a First Amendment

7    violation because plaintiff eventually received this publication, albeit two months after it was

8    delivered to the institution.  MTD at 9.

9        While a short-term delay in mail delivery may not violate the First Amendment,

10   this court cannot say that a two-month delay meets this definition in light of existing precedent.

11   See Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (brief delay resulting from inspection may

12   not violate First Amendment); cf. Sizemore v. Williford, 829 F.2d 608, 610 (7th Cir. 1987)

13   ("relatively short-term, non content-based disruption in the delivery of inmate reading materials

14   will not support . . .a cause of action grounded upon the First Amendment").  Moreover, as noted

15   above, plaintiff has alleged that he was not given notice that his mail was withheld, which also

16   may be a sufficient basis for his First Amendment claim.  Frost, 197 F.3d at 353.

17       C.  Right To An Appeals Process

18       Defendants argue that those allegations of the complaint outlining their refusal to

19   act after learning of constitutional violations during the appeals process do not state a claim

20   because there is no right to an inmate grievance process.  MTD at 9.  As plaintiff argues,

21

22       their path to liberation. Bearing singular insight into the rage and frustration of colonized
         peoples, and the role of violence in effecting historical change, the book incisively attacks
23       the twin perils of post independence colonial politics: the disenfranchisement of the
         masses by the elites on the one hand, and intertribal and interfaith animosities on the
24       other. Fanon's analysis, a veritable handbook of social reorganization for leaders of
         emerging nations, has been reflected all too clearly in the corruption and violence that has
25       plagued present-day Africa. The Wretched of the Earth has had a major impact on civil
         rights, anticolonialism, and black consciousness movements around the world . . . .
26       See <www.amazon.com> (accessed on July 26, 2006).

11

1  however, this portion of the complaint is not based on any perceived failure of the grievance

2  process but rather on the defendants' actions in refusing to correct First Amendment violations at

3  the prison.

4      D.  Personal Involvement And Defendants Runnels, Alameida, Bard, Kosub,
          Rianda And Hubbard

5

6          These defendants argue that the complaint fails to state a claim against them

7  because they were not personally involved in any First Amendment violations.  Plaintiff alleges,

8  however, that they had the ability to cure the violation, yet refused to act even after they received

9  notice of it.

10         Liability may be imposed on an individual defendant under section 1983 if the

11  plaintiff can show that the defendant proximately caused the deprivation of a federally protected

12  right. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  A person deprives another of a

13  constitutional right within the meaning of section 1983 if he commits an affirmative act,

14  participates in another's affirmative act or omits to perform an act that he is legally required to do

15  and thereby causes the deprivation of which the plaintiff complains.  Leer, 844 F.2d at 633.

16  Thus, a supervisor may be liable under section 1983 upon a showing of (1) personal involvement

17  in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's

18  wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d

19  1435, 1446 (9th Cir. 1991) (en banc).  "A supervisor is only liable for constitutional violations of

20  his subordinates if the supervisor participated in or directed the violations, or knew of the

21  violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

22  IV.  Defendant Colon

23         Plaintiff seeks to substitute the estate or personal representative of A. Colon after

24  learning that this defendant is deceased.  However, there is no indication that plaintiff's motion

25  has been served on defendant Colon's estate in the manner contemplated by Federal Rules of

26  Civil Procedure 25(a) and 4.  The motion therefore will be denied.

V.  Plaintiff's Motion For Injunctive Relief

Plaintiff has filed a motion for a temporary restraining order and preliminary injunction, alleging that officials at California State Prison–Corcoran, where he is currently housed, have deprived him of some pages of correspondence, issues of the Jackson Advocate and San Francisco Bay View newspapers and Maoist newsletters.  He seeks to restrain the warden of CSP-Corcoran and the Director of the Department of Corrections from violating his First Amendment rights.

The warden of CSP-Corcoran and the current Secretary of the Department of Corrections and Rehabilitation[3] are not defendants in this action.  This court is unable to issue an order against individuals who are not parties to a suit pending before it.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).

IT IS HEREBY ORDERED that:

1.  Plaintiff's motion to substitute parties (docket no. 67) is denied; and

2.  Plaintiff's motion for a temporary restraining order (docket no. 76) is denied.

IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (docket no. 59) be granted on the ground that plaintiff failed to exhaust his claim that defendants conspired to deprive him of his rights to receive publications and of access to the courts, but denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised

_____

[3] These are the new titles of the administrator and the department, respectively.

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   July 27, 2006.


_____
UNITED STATES MAGISTRATE JUDGE


2/brow1224.57